IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE S.,[1]

       Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

       Defendant.

_____

Civ. No. 6:19-cv-01194-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Michelle S. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g).

Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to credit Plaintiff's testimony, (2) failing to find that Plaintiff's condition met or equaled a listing, and (3) improperly crafting Plaintiff's residual functional capacity ("RFC"). Pl.'s Br. 7–20, ECF No. 10. Because there is not substantial evidence in the record to support the ALJ's findings and errors are not harmless, the Commissioner's decision is REVERSED and REMANDED for calculation and award of benefits.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB on August 21, 2015, alleging disability since May 1, 2010. Tr. 15, 199. Her claim was denied initially and upon reconsideration. Tr. 56–68, 71–84. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Mary Ann Lunderman on June 18, 2018. Tr. 100–101, 15. Plaintiff's alleged onset date of May 1, 2010 was prior to the December 6, 2013 unfavorable adjudication of a previous application. Tr. 15. The ALJ denied Plaintiff's implied request to reopen the previous application and evaluated Plaintiff's claim using December 7, 2013, the day after the prior unfavorable adjudication, as the alleged onset date. *Id.* ALJ Lunderman denied Plaintiff's claim by a written decision dated July 30, 2018. Tr. 15–25. Plaintiff sought review from the Appeals Council and was denied on June 3, 2019, rendering the ALJ's decision final. Tr. 1–3. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 43 years old at the time of her December 7, 2013 alleged onset date and 48 at the time of the hearing. *See* tr. 24, 33. She completed tenth grade in high school, has a GED, and has worked as a teacher's aide and fast food manager. Tr. 33, 23. Plaintiff alleges disability due to chronic venous insufficiency[2] and morbid obesity. *See* Pl.'s Br. 4–6.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

---

[2] Chronic venous insufficiency "occurs when the valves in the leg veins are not working effectively, making it difficult for blood to return to the heart from the legs." Pl.'s Br. 4–5 (citing *Chronic Venous Insufficiency (CVI)*, CLEVELAND CLINIC (May 14, 2019), https://my.clevelandclinic.org/health/diseases/16872-chronic-venous-insufficiency-cvi). Symptoms include "swelling in the lower legs and ankles [edema], especially after standing, aching in the legs, and venous stasis ulcers, which are painful, open, weeping sores on the skin surface, are difficult to heal, and can get infected and spread to surrounding tissues, a condition known as cellulitis." *Id.*

"Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

## I. Plaintiff's Credibility

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). When there is objective

medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the

evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 21. Plaintiff suffers from the following severe impairments: chronic venous insufficiency and morbid obesity. Tr. 18. She said she could not work due to the constant swelling and pain in her feet. Tr. 38, 43. She stopped working when she and her husband relocated and she could not find work in the new area. Tr. 35. When she was still working, she had problems with her lower extremities. Tr. 38, 43. She has significant edema in both legs, recurring weeping ulcers on both legs—which must be wrapped in specialized gauze bandages called unna boots—and chronic cellulitis on both legs. Tr. 44, 796. She also has recurrent deep vein thrombosis ("DVT"), and a deformity in her left foot. Tr. 38, 46, 794, 982.

Plaintiff testified that she cannot stand for more than ten minutes and can only sit for one hour or so before needing to move. Tr. 38–39. She sits in a recliner with pillows to elevate her legs and relieve some of the swelling. Tr. 45–46. She uses a cane and still cannot walk far. Tr. 39. Doctors have recommended that she exercise so she tries to walk around the block by her house, but she has difficulty and has not "made it all the way around." Tr. 39, 45. The pain makes it hard for her to sleep at night, so she has trouble staying awake during the day and sometimes has to sleep all day. Tr. 40, 46. She struggles with housework, does basic chores more slowly than she used to, and has to take frequent breaks to sit down and elevate her legs. Tr. 40, 45. She does laundry and takes care of two cats, but her husband does most of the cooking. Tr. 40–41. She attends weekly Narcotics Anonymous ("NA") meetings. Tr. 40. She reads, plays games on her phone, and sometimes takes her children to the beach, but "all [she] can do is sit up

on the side and watch them play." Tr. 40–41. She travels approximately an hour and a half for medical appointments. Tr. 41–42.

The ALJ summarized the relevant medical evidence as follows. *See* tr. 21–23. In February 2015, an ultrasound of Plaintiff's right leg showed DVT, collateralization showed chronicity, and a right ankle brachial index showed mild peripheral artery disease in her legs. Tr. 21 (citing tr. 658, 654). Plaintiff was prescribed Coumadin and her swelling improved after six months of treatment. Tr. 21 (citing 503). Physical examinations continued to reveal edema in Plaintiff's extremities, but her skin remained intact. *Id.* In August 2015, Plaintiff was alert, in no acute distress, and did not report any current health problems or concerns. Tr. 21–22 (citing tr. 499–500). Plaintiff had "bilateral lower extremity swelling and edema" and was morbidly obese." Tr. 22 (citing tr. 501). In October 2015, Plaintiff reported problems wearing shoes due to swelling and was "active 'chasing after kids.'" Tr. 22 (citing tr. 732). The physician noted swelling and painful range of motion and recommended a temporary brace and supportive shoe "to accommodate [Plaintiff's] active lifestyle." Tr. 22 (citing tr. 733).

In June 2016, an ultrasound revealed DVT in Plaintiff's left leg. Tr. 22 (citing tr. 1229). Her right leg was unremarkable and had improved. Tr. 22 (comparing tr. 658 with tr. 1244). She reported that she had not taken Coumadin since January, and Coumadin was restarted. Tr. 22 (citing tr. 1229). By August 2016, the swelling and pain in Plaintiff's left lower extremity improved with Coumadin" and Plaintiff was "pleasant and in no acute distress. *Id.* Plaintiff was observed limping due to the pain in her left leg, but her gait was otherwise unremarkable. Tr. 22 (citing tr. 795). The physician recommended that Plaintiff increase her activity. Tr. 22 (citing tr. 801). In December 2016, she sought treatment for foot pain, and an x-ray of the left foot revealed "severe soft tissue swelling, consistent with inflammation along with a developing 9mm defect

of the distal dorsal talus." Tr. 22 (citing tr. 982). In November 2017, Plaintiff went to the emergency room with chest pain. *Id.* Her cardiac workup was negative, her lower extremities revealed chronic venous stasis changes, her gait was normal and steady, and she was diagnosed with gastroesophageal disease. Tr. 22 (citing tr. 939, 942). The ALJ nevertheless concluded that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms [were] inconsistent with the evidence of record" because "chronic venous insufficiency responded well to consistent, regular, and compliant treatment" and she received conservative treatment. Tr. 22–23. The ALJ further found that Plaintiff's activities of daily living were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 23.

Plaintiff argues that the ALJ failed to acknowledge Plaintiff's testimony describing: (1) "constant pain in her feet at all times that limits her from standing for more than 10 minutes at a time and requires elevation of the legs above the heart while taking breaks from standing;" (2) "pain making it hard to sleep and causing fatigue and needing to sleep all days some days;" and (3) "recurring ulcers on her legs that are open and weeping." Pl.'s Br. 9. Plaintiff also argues that the ALJ's findings that Plaintiff received conservative treatment and her conditions improved with treatment are not based on substantial evidence in the record. *Id.* at 9–11.

Plaintiff's statements regarding her leg elevation, fatigue, and ulcers are supported by substantial evidence in the record. Medical professionals have described Plaintiff's edema and ulcers as chronic. *See e.g.* tr. 503–04, 524. On December 21, 2012, Plaintiff was treated for non-healing weeping ulcers, and by January 7, 2013, these ulcers were still open and weeping. Tr. 610, 607. These ulcers eventually healed, and by April 11, 2013, they had not recurred. Tr. 599. On October 4, 2014, Plaintiff experienced open ulcers "weeping serious fluid." Tr. 546. By

January 15, 2015, these weeping ulcers were healing, although Plaintiff was still in constant pain, and by February 17, 2015, the ulcers had dried out and improved. Tr. 77, 524. On May 5, 2015, Plaintiff had new ulcers opening up. Tr. 516. To help control the chronic edema, ulcers, and pain, medical professionals have recommended that Plaintiff elevate her legs as much as possible. *See e.g.* tr. 268, 271, 594, 600, 607, 622, 624, 625, 641, 646, 760, 1319. Additionally, medical professionals have observed Plaintiff's pain-induced insomnia. *See e.g.* tr. 521 (finding Plaintiff with her head on her chest because she did not sleep well the night before), 594 (noting that Plaintiff has trouble sleeping), 599 (finding that Plaintiff suffers from insomnia),767 (finding that Plaintiff nodded off twice during the session and lost train of thought during conversation).

Defendant argues that Plaintiff's symptoms responded well to treatment. Def.'s Br. 3, ECF No. 10. *See also* tr. 21–23. Evidence that treatment is effective and successfully relieves symptoms is a clear and convincing reason for making an adverse credibility determination. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (finding that the ALJ permissibly inferred claimant's pain was not as disabling as alleged when claimant reported not seeking aggressive treatment and did not seek an alternative treatment plan after discontinuing an effective medication due to mild side effects); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may not, however, cherry-pick inconsistencies with objective medical evidence to conclude that the treatment is effective and the claimant is capable of working. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working").

Here, the ALJ found that Plaintiff's symptoms were generally well-controlled by "consistent, regular, and compliant treatment." Tr. 22–23. The ALJ found that after Plaintiff restarted Coumadin, her pain and swelling improved. Tr. 23 (citing tr. 794). However, this example of Plaintiff's condition improving with treatment is specific to Plaintiff's DVT, not her overarching severe chronic venous insufficiency. *See* tr. 794. While there were instances of improvement, Plaintiff's chronic venous insufficiency, edema, and pain persisted throughout the record. *See e.g.* tr. 21, 270, 283, 284, 794, 797, 802–03. Similarly, Plaintiff's ulcers eventually stopped weeping and healed with treatment but are chronic and recurrent. *See e.g.* tr. 44, 503, 516, 521, 524. The record demonstrates that although medication resolved Plaintiff's DVT and facilitated periods of improvement, it was not effective at controlling all of Plaintiff's symptoms and conditions. Therefore, the ALJ erred in finding that Plaintiff's conditions were well-controlled by medication and treatment.

The ALJ also implied that Plaintiff was not compliant with treatment because she abruptly stopped taking Coumadin. Tr. 23. The Ninth Circuit has long held that "in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina*, 674 F.3d at 1113 (quoting *Tommasetti*, 533 F.3d at 1039 (internal quotation marks omitted)). Coumadin, also known as Warfarin, is often prescribed for limited periods of time. Tr. 1222. Physicians determine the length of treatment by weighing the risk of side effects against the risk of DVT because "[t]oo much [W]arfarin increases the risk of bleeding. Too little [W]arfarin continues to allow the risk for blood clots." Tr. 1222–23. Given the nature of this medication, the record does not show that Plaintiff had an "unexplained or inadequately explained" failure to "follow a

prescribed course of treatment." *See Molina*, 674 F.3d at 1113 (quoting *Tommasetti*, 533 F.3d at 1039 (internal quotation marks omitted)).

The ALJ also erred in finding that Plaintiff received conservative treatment regimen. *See* tr. 23. The Ninth Circuit has found that using over-the-counter anti-inflammatory medications in tandem with other non-medication methods to treat physical ailments constitutes conservative treatment. *See Tommasetti*, 533 F.3d at 1040. Here, Plaintiff took Lasix (a diuretic water pill for swelling which must be accompanied by Kayciel), Coumadin (a blood thinner for DVT), Celebrex and Lyrica (for foot pain), and Desyrel (for difficulty sleeping). Tr. 741–42, 829–31. In addition to medications, Plaintiff uses compression stockings and unna boots and elevates her legs. *See e.g.* tr. 44, 168, 207, 599, 760, 831. The number of prescription medication, the serious side-effects of Coumadin, and the various non-medication treatment methods demonstrate that Plaintiff's overall treatment is not conservative. Therefore, the ALJ erred in finding that Plaintiff's treatment was conservative.

Even if Plaintiff received conservative treatment, the ALJ still would have erred because while "a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant had a good reason for not seeking more aggressive treatment." *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). While the ALJ failed to describe what a more aggressive treatment regimen would look like, it is important to note that Plaintiff cannot take narcotic pain medication. As a recovering addict who attends weekly NA meetings and has been clean for ten years, Plaintiff has a good reason for not seeking a more aggressive treatment that would include opioids. *See* tr. 40–41.

Plaintiff next argues that the ALJ erred in evaluating Plaintiff's daily activities. Pl.'s Br. 13. A claimant's daily activities may be grounds for an adverse credibility finding if she "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Here, the ALJ found that Plaintiff cared for two cats, performed household chores, read, played games on her phone, drove, attended weekly NA meetings, took her children to the beach, and traveled an hour and a half for medical appointments once every four months. Tr. 21, 23.

Plaintiff argues that the ALJ failed to: (1) show that Plaintiff's activities were inconsistent with any specific symptom testimony; (2) show that Plaintiff's activities require her to stand or sit for two hours; and (3) acknowledge Plaintiff's frequent need to elevate her legs and occasional need to sleep all day due to nightly foot and leg pain. Pl.'s Br. 13–14. One provider described Plaintiff's lifestyle as "active" because Plaintiff reported "chasing after kids," but these children were 8 and 13 years old. *See* tr. 732–33. Plaintiff testified that she sat on the beach while she watched her children play. Tr. 40–41. Another provider noted that Plaintiff exercises three times a week by walking. Tr. 238, 240, 787, 814. Plaintiff's walks are necessary for compliance with doctor-recommended treatment and do not contradict her testimony. Plaintiff testified that she tries to walk but cannot walk all the way around her block, even with a cane. Tr. 39, 733, 796. These minimal activities do not contradict Plaintiff's allegation of

disability. *See Orn*, 495 F.3d at 639. Additionally, Plaintiff's activities do not demonstrate that she can stand or sit for two hours. The ALJ failed to acknowledge Plaintiffs' reported need to take frequent breaks to elevate her legs when doing activities and occasionally sleep all day due to pain-induced insomnia. Finally, the ALJ did not find that Plaintiff spent a "substantial part" of her day "engaged in activities inconsistent with disabling limitations." *See Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). The ALJ erred in finding that Plaintiff's daily activities contradict claims of total debilitation.

The ALJ's finding regarding the Plaintiff's credibility is not supported and is contradicted by substantial evidence in the record.

## II. Listing 4.11

Plaintiff next argues that the ALJ erred in finding that her chronic venous insufficiency did not meet or equal listing 4.11 because the ALJ failed to acknowledge her obstructions or recurrent ulcers. Pl.'s Br. 19. In order to meet a listing, a claimant's impairments must satisfy all the components of the listing. *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013). Plaintiff's DVTs were accompanied by venous obstructions or occlusions. Tr. 794, 1244. Further, the ongoing edema in Plaintiff's legs establishes venous incompetency. Tr. 23. This Court does not, however, find that Plaintiff's ulcers meet the statutory criteria. There is no evidence that Plaintiff's ulcers appeared three times within a twelve-month period or that they persisted for a consecutive period of at least twelve months. *Compare* 20 C.F.R. pt. 404, Subpt. P, App. 1, 4.00(A)(3)(b)–(c) *with* tr. 503, 516, 521, 524. Because Plaintiff's condition does not meet the listing, the ALJ did not err in finding that Plaintiff was not presumptively disabled.

## III. RFC

Finally, Plaintiff argues that the ALJ failed to account for her obesity and testimony regarding her fatigue and her need to elevate her legs. Pl.'s Br. 20. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). Here, the ALJ found that Plaintiff had the RFC to perform light work with certain exceptions such as limiting standing and walking to no more than two hours. Tr. 20.

Plaintiff argues that the ALJ failed to consider Plaintiff's obesity or chronic venous insufficiency and how these impairments affect her ability to walk and stand. Pl.'s Br. 17; *see also id.* at 20. Although the ALJ found that Plaintiff's morbid obesity was a severe impairment, the ALJ only mentioned that Plaintiff "presents as morbid[ly] obese with ongoing edema" but remains functional Tr. 18, 23. An ALJ is required to explain the reasoning behind a conclusion regarding limitations due to obesity. SSR 02-1, at *7. The ALJ did not do so here. Further, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." *Id.* at *6. The ALJ erred in failing to address Plaintiff's obesity.

The ALJ also failed to acknowledge Plaintiff's fatigue and need to elevate her legs. *See* Pl.'s Br. 20. Several providers observed Plaintiff nodding off during examinations and Plaintiff takes medications for insomnia. Tr. 36, 767, 521, 504. This constitutes substantial evidence that Plaintiff's pain-induced insomnia causes her to sleep during the day. The record also includes substantial evidence that Plaintiff must elevate her legs above her heart as much as possible. *See e.g.* tr. 77, 268, 271, 560, 594, 599, 600, 605, 607, 610, 622, 624, 625, 641, 646, 760, 1294, 1319. Plaintiff's symptom testimony, when credited as true, also shows that she takes frequent breaks to elevate her legs when doing housework and elevates her legs every time she sits down. *See* tr. 40, 45. The vocational expert testified that a person who needs to elevate their legs above their heart during the workday or misses two workdays per month due to insomnia would be unemployable. Tr. 53–54. The ALJ erred in formulating the RFC.

## IV. The Credit-as-True Doctrine

Because the ALJ erred, the question is whether to remand for further administrative proceedings or an award of benefits. "Generally, when a court of appeals reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Bernecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal quotation marks and citations omitted). Under the "credit-as-true" doctrine, however, remand for calculation of benefits is appropriate when:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 at 1020. If "the record raises crucial questions as to the extent of [a claimant's] impairment given inconsistences between his testimony and the medical evidence," the issues should be resolved in further proceedings. *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1105 (9th Cir. 2014). Because "[t]he touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error, the court must assess whether outstanding issues remain *before* considering whether to credit erroneously rejected evidence as a matter of law. *Brown-Hunter*, 806 F.3d at 495 (citations omitted). Even if all the requirements are met, the court may nevertheless remand "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled" within the meaning of the Act, such as when there are inconsistencies between testimony and the medical record, or if "the government has pointed to evidence in the record that the ALJ overlooked" and explained how that evidence belies disability. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015) (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal brackets and quotation marks omitted).

Here, Plaintiff meets all three requirements. The record is fully developed, and there are no ambiguities that necessitate further administrative proceedings. The ALJ failed to provide legally sufficient reasons for rejecting evidence, as described above. Finally when credited as true, Plaintiff's testimony, the medical evidence, and the vocational expert's testimony establish that Plaintiff is disabled under the Act. The vocational expert testified that a person who needs to elevate their legs above their heart during the workday or misses two workdays per month due to insomnia would be unemployable. Tr. 53–54. Plaintiff's testimony, confirmed by her medical providers, indicates a need to elevate her legs frequently, pain-induced insomnia, and an occasional need to sleep during the day, Plaintiff is disabled under the Act. *See* tr. 36, 77, 268, 271, 504, 521, 560, 594, 599, 600, 605, 607, 610, 622, 624, 625, 641, 646, 760, 767, 1294, 1319. Because a consideration of the record as a whole convinces the Court that Plaintiff is disabled, the Court sees no purpose for further proceedings.

## **CONCLUSION**

15 – OPINION AND ORDER

For these reasons, the Commissioner's final decision is REVERSED and REMANDED for calculation and award of benefits in accordance with this Opinion and Order. Final judgement shall be entered accordingly.

IT IS SO ORDERED.

DATED this 28th day of August, 2020.

s/  Michael J. McShane
Michael J. McShane
United States District Judge